In re Sandra A. HOJNOSKI, Debtor.

George M. Reiber, Chapter
13 Trustee, Plaintiff,

v.

Option One Mortgage Corporation,
Defendant.

Bankruptcy No. 04–24564.
Adversary No. 05–2013.

United States Bankruptcy Court,
W.D. New York.

Jan. 4, 2006.

David H. Ealy, Rochester, NY, for Debtor.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On October 8, 2004, Sandra A. Hojnoski (the "Debtor") filed a petition initiating a Chapter 13 case. George M. Reiber, Esq., the standing Chapter 13 Trustee in the Rochester Division of the Western District of New York, became her trustee (the "Trustee").

On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that she was the owner of a residence at 5241 County Route 125, Town of Campbell, Steuben County, New York (the "Residence"), and that Option One Mortgage Corp. ("Option One") held a "verified unrecorded" mortgage on the Residence with an unpaid balance of $31,718.00 (the "Mortgage").

On February 4, 2005, the Trustee commenced an Adversary Proceeding against Option One and other defendants,[1] and on or about April 6, 2005, Option One interposed an "Answer" to the Trustee's "Complaint."

Taken together, the Complaint and the Answer indicated that: (1) the Debtor acquired the Residence by Deed dated May 5, 2002, recorded in the Steuben County Clerk's Office on May 17, 2002 in Liber 1768 of Deeds, Page 252; (2) on or about May 17, 2002, the Debtor executed and delivered the Mortgage to Fairmont Funding; (3) although it was signed and notarized on the last pages in the correct name of the Debtor, the Mortgage showed her name on the front page as "Sandra Hojnowski" rather than "Sandra Hojnoski"; (4) the Mortgage was recorded in the Steuben County Clerk's Office on May 17, 2002 in Liber 1866 of Mortgages, Page 247, and was indexed by the Clerk under the name "Hojnowski"; (5) on June 6, 2002, an Affidavit of Correction of Typographical Error (the "Correction Affidavit") was recorded in the Steuben County Clerk's Office in Liber 1771 of Deeds, Page 6; (6) the Correction Affidavit, executed and delivered by "Sandra A. Hojnoski": (a) set forth all of the execution and recording information regarding the Mortgage, including that it covered the Residence; (b) indicated that the Mortgage contained a typographical error with respect to the spelling of her name; (c) indicated that she was one and the same person; and (d) requested that the Steuben County Clerk cross-reference the Affidavit to all related documents; and (7) on January 28, 2003, an Assignment of the Mortgage from Fairmont Funding to Option One was recorded in the Steuben County Clerk's Office in Liber 95 of Assignments, Page 22.

The Complaint asserted and requested that: (1) the Mortgage was not properly recorded prior to the filing of the Debtor's petition in accordance with the provisions of the New York Real Property Law; (2) the lien of the Mortgage was avoidable by a bona fide purchaser pursuant to Section 291 of the New York Real Property Law ("RPL § 291"); (3) pursuant to Section 544(a), the Trustee stood in the position of a hypothetical bona fide purchaser of the Residence, so that he could avoid the lien of the unrecorded Mortgage; and (4) pursuant to Section 544(b) and Section 551,

---

1. The defendants, Sherman Acquisition, L.P. and Victory Village MHC, LLC, failed to Answer the Trustee's Complaint and default judgments were entered avoiding their judgment liens against the Residence.

the Court should enter an Order avoiding the lien of the Mortgage and preserving it for the benefit of the estate.

The Answer asserted that: (1) notwithstanding that the Debtor's signature on the Mortgage and the acknowledgment by the notary public were correct, the Steuben County Clerk's Office indexed the Mortgage under the incorrect name of "Sandra Hojnowski"; (2) as a matter of law the Mortgage was properly recorded in accordance with the New York State Recording Act, even though the name of the Debtor was misspelled on the front page of the Mortgage; (3) the Mortgage was easily discoverable by a reasonable search of the public records of the Steuben County Clerk's Office, so that the Trustee was not a hypothetical bona fide purchaser of the Residence without notice of the Mortgage; (4) the Correction Affidavit was: (a) recorded in the Steuben County Clerk's Office in the Liber of Deeds under the Debtor's correct name; (b) in the chain of title for the Residence; and (c) easily discoverable by a reasonable search of the public records of the Steuben County Clerk's Office, so the Trustee was not a hypothetical bona fide purchaser of the Residence without notice of the Mortgage that was clearly identified in the Correction Affidavit; (5) because both the Mortgage and the Correction Affidavit were easily discoverable by a reasonable search of the public records of the Steuben County Clerk's Office, any party purporting to be a bona fide purchaser, including the Trustee, was on inquiry notice of all of the documents recorded in the Steuben County Clerk's Office, and any reasonable inquiry would have uncovered that the Mortgage was a lien on the Residence; and (6) the New York State Recording Act, specifically RPL § 291, protected the recorded Mortgage and prevents the Trustee from avoiding it as a bona fide purchaser.

After the Court conducted a pretrial conference, each of the parties filed a Motion for Summary Judgment.

In his Motion for Summary Judgment, which included a Memorandum of Law, a Reply Memorandum of Law, Reply Declaration and the Supporting Declaration of Christine D. Beers (the "Beer's Declaration") of Monroe Title Insurance Company ("Monroe"), the Trustee asserted that: (1) although the Residence is located in the Town of Campbell, Steuben County, New York, the Steuben County Clerk indexed the Correction Affidavit as affecting real property in the Town of Erwin, Steuben County, New York; (2) the indexing error was shown on an Indexing Name Search (Exhibit "B" to the Beer's Declaration), dated February 28, 2005 at 11:53 a.m., provided by the Steuben County Clerk (the "Initial Clerk's Search"); (3) a January 31, 2005 title search for the Debtor and the Residence (the "Trustee Search"), prepared by Monroe at the request of the Trustee, which indicated that Monroe searched Deeds, Mortgages, Judgments, Miscellaneous Records and Other Records, did not set forth either the Mortgage or the Correction Affidavit; (4) the Beer's Declaration indicated that the Initial Clerk's Search showed the existence of an Affidavit, determined only after the Trustee Search was prepared to be the Correction Affidavit, recorded under the Debtor's name on June 6, 2002, but it was indexed as affecting property in the Town of Erwin, not in the Town of Campbell where the Residence was located; (5) on or about February 28, 2005, Monroe advised the Steuben County Clerk of the error with respect to the Town of Erwin and the Clerk's Office re-indexed the Correction Affidavit as affecting property in the Town of Campbell, as evidenced by the Indexing Name Search (Exhibit "C" to the Beer's Declaration), dated February 28, 2005 at 1:56 p.m. (The "Second Clerk's Search");

(6) although Option One also obtained a title search prepared by Monroe, dated March 14, 2005 (the "Option One Search"), which showed the Mortgage and Correction Affidavit, the Option One Search request covered the names of both "Hojnowski" and "Hojnoski," and it was made after the Steuben County Clerk's Office had corrected its previous indexing error on February 28, 2005; (7) a bona fide purchaser for value is not required under New York Law to search documents that are outside the chain of title, and any such documents do not constitute constructive notice in accordance with the decision of the Appellate Division Second Department in *Baccari v. DeSanti*, 70 A.D.2d 198, 431 N.Y.S.2d 829 (2d Dep't 1979) ("*Baccari*"), which held that an error in indexing prevents the record from constituting constructive notice; and (8) as a result of the error of the Steuben County Clerk's Office in indexing the Correction Affidavit as affecting property located in the Town of Erwin: (a) both the Mortgage and the Correction Affidavit were outside of the chain of title for the Residence; and (b) neither the recorded Mortgage nor the recorded Correction Affidavit constituted constructive notice under RPL § 291.

In its Motion for Summary Judgment, Option One asserted that: (1) it had obtained the Option One Search from Monroe in the name of the Debtor and "Hojnowski," the misspelled name on the Mortgage; (2) the Option One Search set forth the Deed, Mortgage and Correction Affidavit, and was based upon the Indexes of the Steuben County Clerk; (3) the Correction Affidavit was set forth in the Grantor/Grantee Index under the Debtor's proper name, "Hojnoski," as required by RPL § 291; (4) the Initial Clerk's Search attached to the Beer's Declaration, made before the indexing error was corrected by the Steuben County Clerk's Office, shows the Correction Affidavit; (5) a bona fide purchaser is charged with constructive and inquiry notice of all items within the chain of title, and the Correction Affidavit is clearly within the chain of title of the Debtor, because it was recorded under the Debtor's proper name in the Liber of Deeds in the proper County Clerk's Office, as required by RPL § 291; (6) the information contained in the Correction Affidavit put any prospective purchaser on notice that the Mortgage was a lien against the Residence; (7) to be a bona fide purchaser an individual would have had to read the Correction Affidavit, and upon reading it would have learned of the existence of the Mortgage; and (8) the indexing error of the Steuben County Clerk's Office, which indicated that the Correction Affidavit affected property in the Town of Erwin, rather than in the Town of Campbell, did not relieve the Trustee or any bona fide purchaser on the date of the filing of the Debtor's petition from the obligation to inspect the Correction Affidavit, since New York Real Property Law Section 316 ("RPL § 316") does not require the County Clerk to index by town, it only requires the County Clerk to index by name.

## DISCUSSION

### I. *Overview*

At the hearing on the Motions for Summary Judgment, the parties indicated that they did not believe that an evidentiary hearing was required because they believed that all of the material facts that were necessary for the Court to decide this Adversary Proceeding had been presented and were undisputed.

A hearing, however, could have more fully developed: (1) the relevant searching methodologies of a professional title searcher in the State of New York, based upon: (a) the statutory and case law cited by the parties; (b) any other published

title standards used by professional title searchers in New York State; and (c) new methodologies or title standards developed in response to Electronic Search Programs, such as the one in use in Steuben County, New York; (2) what anyone would have seen on the date of the filing of the Debtor's petition when searching the relevant physical Indexes maintained by the Steuben County Clerk's Office specifically the Grantor/Grantee Index; and (3) what, if any, additional information could have been easily accessed on that date when using the Electronic Search Program available at the Steuben County Clerk's Office, including the instantaneous review of documents set out in an Electronic Search.

Based upon the submissions of the parties, and in the absence of an evidentiary hearing that may have provided some or all of the above information, the Court makes the following observations and assumptions:

1. The Court does not know whether the Steuben County Clerk's Office maintained physical Grantor/Grantee and Mortgagor/Mortgagee Indexes in May and June of 2002 when the Mortgage and Correction Affidavit were recorded. The Court assumes that it did maintain these indexes. The Court does not know what the entry in the Index of Deeds for the Correction Affidavit actually showed at that time, what is shown on the Initial Clerk's Search (Exhibit "B" to the Beer's Declaration), which notes, "AFFID,"[2] what is shown on the Second Clerk's Search, which notes, "Affidavit In Re Correction of Typographical Error," or something altogether differ-

ent. The Court assumes that the notation was not merely "AFFID," but was "Affidavit In Re Correction of Typographical Error";

2. Neither party has advised the Court as to whether all of the information contained in all of the Grantor/Grantee Indexes maintained at the Steuben County Clerk's Office are included in its Electronic Search Program. Therefore, the Court assumes that the Electronic Search Program available to parties at the Steuben County Clerk's Office, which produces Electronic Indexing Searches like the Initial Clerk's Search, included at the time of the filing of the Debtor's petition the Grantor/Grantee Index information for at least the prior twenty-five (25) years (so, in this case, back to October 1979);

3. The Court assumes that since both parties so heavily relied upon the Electronic Indexing Searches in their submissions that at some time prior to October 8, 2004, when the Debtor filed her petition, the Steuben County Clerk's Office no longer maintained physical Grantor/Grantee and Mortgagor/Mortgagee Indexes, so that all indexing information from that time forward could only be accessed and viewed by using the Electronic Search Program. Therefore, in order to do a complete title search against the Debtor and the Residence through the date of the filing of her petition, a searcher, including a prospective purchaser, would have had to use the Electronic Search Program for at least a portion of their title search; and

---

**2.** Having searched many real property titles as an attorney in private practice before 1992, this would be unlikely. Affidavits in the

Grantor/Grantee Index were always more fully described.

4. The Court assumes that if a searcher pulled up the Initial Clerk's Search when searching the Debtor and the Residence through the date of the filing of her petition, as required by the assumption in Paragraph 3 above, the searcher could simply have clicked on the entry "AFFID" and the Correction Affidavit in its entirety would have appeared on the screen for review.

## II. Statutes and Case Law

### A. Summary Judgment

Fed.R.Civ.P. 56, incorporated by reference in Fed.R.Bankr.P. 7056, "provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled, as a matter of law, to a judgment in its favor." *In re Bennett Funding Group, Inc.,* 220 B.R. 743 (Bankr.N.D.N.Y.1997), citing *Federal Deposit Ins. Corp. v. Bernstein,* 944 F.2d 101, 106 (2d Cir.1991). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. *In re Corcoran,* 246 B.R. 152, 158 (E.D.N.Y.2000), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met its initial burden, "the non-movant must then come forward with sufficient evidence on the elements essential to its case to support a verdict in its favor." *Corcoran,* 246 B.R. at 158, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding to grant or deny summary judgment, "the trial court must resolve all ambiguities and draw inferences in favor of the party against whom summary judgment is sought." *Bennett Funding Group, Inc.,* 220 B.R. at 751, citing *LaFond v. General Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir.1995); *Corcoran,* 246 B.R. at 156, citing *Reyes v. Delta Dallas Alpha Corp.,* 199 F.3d 626, 627–28 (2d Cir.1999). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir.1997) citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 586, 106 S.Ct. 1348 (1986) (further citations omitted). Summary judgment is therefore inappropriate if any evidence exists in the record upon which a reasonable inference may be drawn in favor of the non-moving party. *Id.,* citing *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### B. Recording Statutes

■ Section 544(a)(3)[3] gives the Trustee the status, rights and remedies of a bona fide purchaser of real property for value under New York Law. In evaluating the strong-arm rights of a trustee as a hypothetical bona fide purchaser of real property, the Bankruptcy Court looks to law regarding bona fide purchaser status under substantive state law pertaining to property which is the subject of the strong-arm avoidance proceeding. *See In re Mosello,* 190 B.R. 165 (Bankr.S.D.N.Y. 1995).

---

3. (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by...

... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C.A. § 544 (2005).

RPL § 291 [4] provides that any conveyance, including a mortgage, not recorded in the County Clerk's Office in which the real property is located is void as against any person who subsequently purchases the property in good faith and for valuable consideration.

RPL § 316:(1) makes the Indexes, which must be alphabetical and by name, maintained by a County Clerk's Office a part of the record, but it does not require a Clerk to index by town; [5] and (2) authorizes Electronic Search Programs.

■■■ We know from New York Case Law that: (1) the recording statutes in a Grantor/Grantee indexing system charge a purchaser with notice of matters only in the record of the purchased land's chain of title back to the original grantor, so that a purchaser is not normally required to search outside the chain of title, *See Witter v. Taggart*, 78 N.Y.2d 234, 238–39, 573 N.Y.S.2d 146, 577 N.E.2d 338 (N.Y.1991) and the cases cited therein; (2) a bona fide purchaser may be charged with constructive notice of all matters which are in the record, so that in examining the record, such a purchaser is required to inquire as to any defect in his grantor's title that may have been revealed, *See In re Hardway Restaurant, Inc.*, 31 B.R. 322, 330 (Bankr. S.D.N.Y.1983) and the cases cited therein; and (3) an error in indexing a recorded conveyance because of a misspelled name takes that conveyance outside of the chain of title, consistent with the "by name"

**4.** A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded *is void as against* any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, or acquires by assignment the rent to accrue therefrom as provided in section two hundred ninety-four-a of the real property law, in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded.

McKinney's Real Property Law § 291 (2005).

**5.** Each recording officer must provide, at the expense of his county, proper books for making general indexes of instruments recorded in his office, and must form indexes therein, so as to afford correct and easy reference to the records in his office. There must be one set of indexes for mortgages or securities in the nature of mortgages and assignments of rent; and another set for conveyances and other instruments not intended as such mortgages or securities, and executory contracts for sale, purchase or exchange of real property, or memoranda thereof, and instruments canceling or extending such contracts. Each set must contain two lists in alphabetical order, one consisting of the names of the grantors or mortgagors and assignors, followed by the names of their grantees, mortgagees or assignees, and the other list consisting of the names of the grantees or mortgagees and assignees, *followed by the names of their* grantors, mortgagors, or assignors, with proper blanks in each class of names, for subsequent entries, which entries must be made as instruments are delivered for record. This section, so far as relates to the preparation of new indexes, shall not apply to a county where the recording officer now has general numerical indexes.

Such indexes shall form a part of the record of each instrument hereafter recorded.

A county clerk may adopt a new indexing system *utilizing electro-mechanical, electronic or any other method he deems suitable for* maintaining the indexes.

McKinney's Real Property Law § 316 (2005).

indexing requirements of RPL § 316, *See Coco v. Ranalletta,* 189 Misc.2d 535, 733 N.Y.S.2d 849 (Sup.Ct.2001). We also know that, based upon *Baccari,* widely accepted and seemingly settled New York Real Property Law includes the proposition that any error in indexing, including an erroneous designation of the town in which the real property is located, takes a recorded document outside the chain of title and is constructive notice to a prospective purchaser only from the time the error is corrected and the document is properly indexed. This is so even though a careful reading of *Baccari* and its holding indicates that: (1) the decision is based upon a specific local statute that required the County Clerk in question to index conveyances by town, something not specifically required by RPL § 316; and (2) the Court's statement that the local statute in question merely carried out the intent of RPL § 316, appears to be a gratuitous one unsupported by any specific statutory provision of New York Law or legislative history.

### III. *The Trustee as a Hypothetical Bona Fide Purchaser*

█ Based upon all of the pleadings and proceedings in this Adversary Proceeding, the Court finds that the Trustee is not a hypothetical bona fide purchaser for value who can avoid the Mortgage, for the following reasons: (1) based upon the assumptions contained in this Decision & Order, a searcher, including a prospective purchaser, examining the Initial Clerk's Search, and thus knowing that it included Grantor/Grantee Index information from at least October 1979, would, therefore, see that there was no predicate document of conveyance recorded in the Steuben County Clerk's Office indicating that the Debtor had any interest in real property located in the Town of Erwin, Steuben County, New York, so that it would be reasonable for

that searcher to question whether there was an indexing error concerning the document described as "AFFID"; (2) that same searcher, now knowing that there was no apparent predicate interest in real property in the Town of Erwin, seeing the notation that an "AFFID" was recorded in the Liber of Deeds, would also have seen that the Affidavit was recorded less than three weeks after the Deed to the Debtor of the Residence in the Town of Campbell was recorded; (3) that searcher, faced with no informative description of an Affidavit recorded within three weeks of the recording of the Deed of the Residence in the Town of Campbell, would have also known that he or she then could easily have either: (a) gone to the physical Grantor/Grantee Index maintained by the Steuben County Clerk's Office in order to, at a minimum, obtain a more complete description of the Affidavit, in which case, based upon the Court's previous assumptions, the searcher would have: (i) learned that it was an Affidavit In Re Correction of Typographical Error; (ii) realized that it might relate to the recently recorded Deed to the Debtor; and (iii) gone to the records in the Clerk's Office, reviewed the Affidavit and immediately learned of the existence of the Mortgage; or (b), as would have been more likely, simply clicked on the word "AFFID" to instantaneously review a complete copy of the Affidavit, and immediately learned of the existence of the Mortgage; and (4) given the Electronic Search Program of the Steuben County Clerk's Office, which would have allowed a searcher to simply click on and review a complete copy of the "AFFID" when: (a) there was no predicate recorded document indicating that the Debtor had an interest in real property in the Town of Erwin; and (b) there was only an obviously shorthand description of the recorded Affidavit, the searcher should have clicked on "AFFID"

and reviewed the document in order, in this Court's opinion, to have effectively searched the chain of title for the Debtor and the Residence.

This Decision should be limited to the exact facts and circumstances presented, and in this case not presented, which required the Court to make a number of assumptions. This Decision reflects only what the Court believes, based upon the facts and circumstances and its assumptions, a professional title searcher or any prospective purchaser would have been required to do in order to have effectively searched the chain of title for the Debtor and the Residence.[6]

What is certain is that in the future, because of the existence of Electronic Search Programs and the additional information those Programs instantaneously provide to a professional title searcher and prospective purchaser, some former title standards and searching methodologies will no longer be sufficient to effectively search a chain of title for bona fide purchaser purposes.

### CONCLUSION

The Trustee's Motion for Summary Judgment is denied, the Option One Motion for Summary Judgment is granted and the Trustee's Adversary Proceeding is dismissed with prejudice.

**IT IS SO ORDERED.**

---

6. The mere fact that the person who performed the Trustee Search apparently did not do what the Court believes they should have done to have effectively searched the chain of title for the Debtor and the Residence because they failed to find the Mortgage in the chain of title does not make the Trustee a hypothetical bona fide purchaser.